Citation Nr: 1313629 
Decision Date: 04/24/13 Archive Date: 05/03/13

DOCKET NO. 10-22 259 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Phoenix, Arizona



THE ISSUES

1. Entitlement to service connection for a lumbar spine disorder. 

2. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), mental stress, anxiety, and depression.

3. Entitlement to service connection for elevated uric acid levels, to include as due to exposure to herbicides and/or asbestos.

4. Entitlement to service connection for a skin disorder, to include as due to exposure to herbicides and/or asbestos.

5. Entitlement to service connection for gout, to include as due to exposure to herbicides and/or asbestos.

6. Entitlement to service connection for elevated prostate levels, to include as due to exposure to herbicides and/or asbestos.

7. Entitlement to service connection for hepatitis C, to include as due to exposure to herbicides and/or asbestos.

8. Entitlement to service connection for a left knee disorder, to include as due to exposure to herbicides and/or asbestos.

9. Entitlement to service connection for erectile dysfunction, to include as due to exposure to herbicides and/or asbestos.

10. Entitlement to service connection for generalized arthritis, to include as due to exposure to herbicides and/or asbestos.

11. Entitlement to service connection for high cholesterol, to include as due to exposure to herbicides and/or asbestos.



REPRESENTATION

Appellant represented by: The American Legion



WITNESS AT HEARING ON APPEAL

The appellant



ATTORNEY FOR THE BOARD

J. Smith, Counsel


INTRODUCTION

The Veteran served on active duty from July 1963 to June 1967.
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from May 2009 and July 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Phoenix, Arizona, and Boise, Idaho, respectively. The case was subsequently transferred to the jurisdiction of the RO in Phoenix, Arizona. 

In May 2012, the Veteran testified during a hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing is of record. 

The Board notes that the psychiatric claim on appeal was previously developed as separate claims for PTSD and for mental stress, anxiety, and depression. The Court of Appeals for Veterans Claims has held that the scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1 (2009). As such, the claims have been recharacterized as a single claim, to include any psychiatric disorder.

The Board notes that the claim for service connection for arthritis has been recharcterized as one for generalized arthritis to more accurately reflect the Veteran's actual arguments and assertions. Specifically, at the May 2012 hearing, the Veteran testified that the claim is for "all over arthritis." Hearing Transcript, p. 31.

The Board has considered documentation included in the Virtual VA system in reaching the determination below. At present, the system contains VA treatment records that are not physically in the file, but that were considered by the RO in the last statement of the case and supplemental statement of the case.

In addition, the Veteran and his representative submitted additional evidence in March 2013 and April 2013, which included medical records and lay statements. They also provided a waiver of the RO's initial consideration of such evidence. Therefore, the Board may proceed with adjudication of the case.

The issue of entitlement to service connection for an acquired psychiatric disorder is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.



FINDINGS OF FACT

1. On the record at the May 2012 Board hearing and in an accompanying May 2012 statement, prior to the promulgation of a decision in the appeal, the Board was notified by the appellant and his representative that a withdrawal of the claim for service connection for a lumbar spine disorder was requested.

2. Elevated prostate specific antigen (PSA) levels, elevated uric acid levels, and high cholesterol are laboratory findings and not a disability or disease for VA purposes. It has not been shown the Veteran has any disorder associated with elevated PSA levels, elevated uric acid levels, or high cholesterol.

3. The Veteran does not have a current diagnosis of hepatitis C or generalized arthritis. His only diagnoses of arthritis pertain to the left knee and back, which are already on appeal as separate claims.

4. The Veteran's gout, skin disorders, left knee disorder, and erectile dysfunction are not included in the enumerated list of diseases eligible for presumptive service connection as due to herbicide exposure set forth in 38 C.F.R. §3.309(e), and arthritis is not shown to have manifested to a degree of 10 percent or more within one year from the date of separation from service.

5. The Veteran is not shown to have to have served in the Republic of Vietnam or to have been otherwise exposed to herbicides during active military duty.

6. The Veteran's current gout, skin disorders, left knee disorder, and erectile dysfunction are not otherwise shown to be causally or etiologically related to service. 


CONCLUSIONS OF LAW

1. The criteria for withdrawal of an appeal for entitlement to service connection for a lumbar spine disorder by the appellant and his authorized representative have been met. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2002); 38 C.F.R. § 20.204 (2012).

2. Service connection for elevated uric acid levels is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2012).

3. A skin disorder was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

4. Gout was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

5. Service connection for elevated PSA levels is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2012).

6. Hepatitis C was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

7. A left knee disorder was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

8. Erectile dysfunction was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

9. Generalized arthritis was not incurred in active service and is not due to asbestos and herbicide exposure in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2012).

10. Service connection for high cholesterol is not warranted. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 1154 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2012).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Notice and Assistance

Upon receipt of a substantially complete application for benefits, VA must notify the claimant what information or evidence is needed in order to substantiate the claim and it must assist the claimant by making reasonable efforts to get the evidence needed. 38 U.S.C.A. §§ 5103(a), 5103A; 38 C.F.R. § 3.159(b); see Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002). The notice required must be provided to the claimant before the initial unfavorable decision on a claim for VA benefits, and it must (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103(a); 38 C.F.R. § 3.159(b)(1); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004).

In Dingess v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that, upon receipt of an application for a service-connection claim, 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating, or is necessary to substantiate, each of the five elements of the claim, including notice of what is required to establish service connection and that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded.

With respect to the claims being decided herein, the RO did provide the appellant with notice in July 2010, prior to the initial decision on the claims in July 2011. Therefore, the timing requirement of the notice as set forth in Pelegrini has been met and to decide the appeal would not be prejudicial to the claimant.

Moreover, the requirements with respect to the content of the notice were met in this case. The RO informed the Veteran in the notice letter about the information and evidence that is necessary to substantiate his claims for service connection and of the division of responsibilities in obtaining such evidence. The July 2010 letter also explained how disability ratings and effective dates are determined. 

In addition, the duty to assist the Veteran has also been satisfied in this case. The Veteran's service treatment and personnel records, as well as all identified and available VA and private medical records pertinent to the years after service, are in the claims file and were reviewed by both the RO and the Board in connection with the his claims. The Veteran was further provided the opportunity to testify at a hearing before the Board, and the RO did request verification of the Veteran's asbestos exposure in service. 

The Board does observe that the Veteran has not been afforded a VA examination in connection with the claims adjudicated herein. The Board, however, finds that no such examination is required in this case. As will be explained below, the evidence does not show that there was a disease, injury, event, or exposure to asbestos or herbicide to which a current disorder could be related. There is also no evidence that the Veteran has a current diagnosis or a valid disability for a number of the claims. Therefore, because there is no event, injury, or disease in service to which a current disorder, if any, could be related, the Board finds that VA examinations for the claims on appeal are unnecessary. 38 C.F.R. § 3.159(c)(4)(i); cf. Duenas v. Principi, 18 Vet. App. 512, 517 (2004), citing Paralyzed Veterans of Am. V. Sec'y of Veterans Affairs, 345 F.3d 1334, 1355-57 (Fed.Cir. 2003) (noting that a medical examination conducted in connection with claim development could not aid in substantiating a claim when the record does not already contain evidence of an inservice event, injury, or disease). Consequently, VA is under no duty to afford the Veteran a VA examination. 38 U.S.C.A. § 5103A(d) (West 2002); 38 C.F.R. § 3.159(c)(4) (2012); McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

VA has further assisted the Veteran and his representative throughout the course of this appeal by providing them with a SOC and a SSOC, which informed them of the laws and regulations relevant to the Veteran's claims. For these reasons, the Board concludes that VA has fulfilled the duty to assist the Veteran in this case.


Law and Analysis

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Lumbar Spine Disorder 

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105 (West 2002). An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204 (2012). Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. 

In the present case, the Veteran and his representative withdrew the claim for entitlement to service connection for a lumbar spine from the appeal, and hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review the appeal for the issue of entitlement to service connection for a lumbar spine disorder, and it is dismissed.


Uric Acid, Prostate, & High Cholesterol

The record in this case shows the Veteran has been assessed as having an elevated PSA level, an elevated uric acid level, and high cholesterol. However, the evidence does not reveal a current diagnosis associated with those findings. 

Service connection is only warranted when the evidence demonstrates a disability. "Disability" means impairment in earning capacity resulting from diseases and injuries and their residual conditions. 38 C.F.R. § 4.1; Hunt v. Derwinski, 1 Vet. App. 292, 296 (1991); Allen v. Brown, 7 Vet. App. 439, 448 (1995). The Board notes that a symptom, without a diagnosed or identifiable underlying malady or condition, does not, in and of itself, constitute a "disability" for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282 (1999).

Abnormal uric acid levels, PSA levels, and high cholesterol represent laboratory findings, and not disabilities, for VA purposes. See 61 Fed. Reg. 20440, 20445 (May 7, 1996). The evidence does not show that the Veteran's elevated PSA level, elevated uric acid level, and high cholesterol are a manifestation of, or are associated with, an underlying pathologic process that itself is a disability.

In the absence of proof of a present disability, there can be no valid claim for service connection. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). As such, the Board concludes that the claim of entitlement to service connection for elevated uric acid levels, PSA levels, and high cholesterol must be denied.
Hepatitis C

With regard to the Veteran's claim for hepatitis C, the Veterans Benefits Administration (VBA) has published guidance for adjudicating hepatitis C claims. A VBA Fast Letter issued in June 2004 identified "key points" that included the fact that hepatitis C is spread primarily by contact with blood and blood products with the highest prevalence of hepatitis C infection among those with repeated, direct percutaneous (through the skin) exposure to blood (i.e., intravenous drug users, recipients of blood transfusions before screening of the blood supply began in 1992, and hemophiliacs treated with clotting factor before 1987). Another "key point" was the fact that hepatitis C can potentially be transmitted with the reuse of needles for tattoos, body piercing, and acupuncture. The fast letter indicates in its conclusion section that the large majority of hepatitis C infections can be accounted for by known modes of transmission, primarily transfusion of blood products before 1992 and injection drug use. It also noted that transmission of hepatitis C virus with air gun injections was "biologically plausible," notwithstanding the lack of any scientific evidence so documenting. It noted that it was essential that the report upon which the determination of service connection is made includes a full discussion of all modes of transmission, and a rationale as to why the examiner believes the air gun was the source of the hepatitis C. VBA Fast Letter 04-13 (June 29, 2004).

Here, the Veteran's service treatment records are negative for any complaints, treatment, or diagnosis of hepatitis C. Nevertheless, the Board acknowledges that the Veteran underwent tattoo removals in January 1965 and April 1965. Additionally, it appears that he received new tattoos during service, as his separation examination report documents different tattoos than those listed on his entrance examination report.

Nevertheless, the post-service medical records contain no diagnosis of hepatitis C. In a July 2004 VA treatment record, it was noted the Veteran had positive risk factors for hepatitis C, and a laboratory test for the hepatitis C antibody was ordered. The subsequent treatment records, however, reveal no documentation of this antibody or a diagnosis of hepatitis C. The Veteran's laboratory results were reviewed in treatment records dated in late July 2004 and August 2004, and no discussion of hepatitis C was made. The remainder of the post-service medical evidence is similarly silent for any mention of hepatitis C, including in laboratory work conducted through 2012.

Simply put, the record does not demonstrate a current diagnosis of hepatitis C. The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1110, 1131; see Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997) (holding that interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary). Evidence must show that the Veteran currently has the disability for which benefits are being claimed. Accordingly, the Board concludes that service connection for hepatitis C is not warranted. 


Generalized Arthritis

With regard to the Veteran's claim for arthritis, his service treatment records do not reveal any complaints, diagnosis, or treatment for arthritis. Upon examination at separation from service in June 1967, the Veteran was not noted to have any pertinent abnormalities.

The only diagnoses of arthritis found in the post-service treatment records pertain to arthritis of the left knee and arthritis of the back, both of which are the subject of separate claims already on appeal. The record is devoid of any diagnoses of arthritis in any other part of the body. 

The only entry possibly related is an assessment of "myalgias" in a June 2007 VA treatment record. However, myalgia is defined as "pain in a muscle or muscles." See Dorland's Illustrated Medical Dictionary, at 1214 (32d ed. 2012). Pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted. Sanchez-Benitez v. West, 13 Vet. App. 282 (1999), appeal dismissed in part, and vacated and remanded in part sub nom. Sanchez-Benitez v. Principi, 259 F.3d 1356 (Fed. Cir. 2001); Evans v. West, 12 Vet. App. 22, 31-32 (1998). Thus, the fact remains that there is no x-ray evidence or other diagnosis of arthritis affect any part of the body other than the back and left knee.

As previously noted, the existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1110, 1131; see Degmetich v. Brown, 104 F. 3d 1328, 1332 (1997) (holding that interpretation of sections 1110 and 1131 of the statute as requiring the existence of a present disability for VA compensation purposes cannot be considered arbitrary). Evidence must show that the Veteran currently has the disability for which benefits are being claimed. Accordingly, the Board concludes that service connection for generalized arthritis is not warranted. 


Gout, Skin Disorder, Left Knee, & Erectile Dysfunction

At the outset, the Board will first address several theories of presumptive service connection available for the Veteran's claims involving gout, a skin disorder, a left knee disorder, and erectile dysfunction. 

First, certain diseases, chronic in nature, may be presumed to have been incurred in service, if the evidence shows that the disease became manifest to a degree of 10 percent or more within one year from separation from active service, even though there is no evidence of the disease during service. 38 U.S.C.A. §§ 1112, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a). Arthritis has been identified as a chronic disease subject to presumptive service connection under 38 C.F.R. § 3.309(a). However, the Board finds that the Veteran is not entitled to this type of presumptive service connection for arthritis. The earliest post-service medical treatment records are dated from 2004, and the Veteran was separated from active duty in 1967. Because there is no evidence to show that arthritis was manifested within one year of the Veteran's service separation, the presumption for service connection for chronic diseases does not apply. 

The law also provides that the Veteran who, during active military, naval or air service, served in the Republic of Vietnam during the Vietnam Era is presumed to have been exposed during such service to certain herbicidal agents (e.g., Agent Orange) unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during service. If the Veteran was exposed to an herbicide agent during service, the following diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there was no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied: AL amyloidosis, chloracne or other acneform disease consistent with chloracne, Type 2 diabetes (also known as Type II diabetes mellitus or adult-onset diabetes), Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, Non-Hodgkin's lymphoma, Parkinson's disease, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcoma (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 
38 C.F.R. § 3.309(e).

None of the disorders on appeal are among those presumed to be associated with herbicide exposure. See 38 C.F.R. § 3.309(e). While some skin conditions, including acneform disease, are included as presumptive conditions, there is no evidence showing, and the Veteran does not allege, that he has these particular skin disorders. VA's Secretary has determined that a presumption of service connection based on exposure to herbicides used in the Republic of Vietnam during the Vietnam era is not warranted for any condition for which the Secretary has not specifically determined a presumption of service connection is warranted. See Notice, 67 Fed. Reg. 42600-42608 (2002); 75 Fed. Reg. 81332 -81335 (2010). Because the Veteran has not been diagnosed with a condition included in 38 C.F.R. § 3.309(e), the presumptive regulation is not applicable to these claims. 

Turning to direct service connection, the Veteran has been diagnosed with gout and erectile dysfunction. He has also been diagnosed with dry skin, as documented in the "problem list" of a May 2010 VA treatment record, for example. See CAPRI Records, p. 22. Additionally, he was diagnosed with a skin tag in October 2010. Id. at 38. The Veteran has also been diagnosed with degenerative arthritic disease with spur formation of the left knee, as documented in an October 2010 VA treatment record, for example. 

At the May 2012 hearing, the Veteran specifically denied that gout, a skin disorder, a left knee disorder, or erectile dysfunction actually arose during service. Hearing Transcript, pp. 23-24, 29, 30. Moreover, his service treatment records do not document any treatment, complaints, or diagnoses pertaining to gout, a skin disorder, a left knee disorder, or erectile dysfunction. Significantly, on separation in June 1967, no abnormalities were found pertaining to the Veteran's skin or lymphatic system, lower extremities, or genitourinary system. Instead, it appears that the Veteran primarily alleges he was exposed to asbestos and herbicides during service, which caused the current conditions. 

As for asbestos exposure, the Veteran contends that he was exposed through the brake linings of the trucks he drove while stationed at Camp Sukiran, Okinawa. There are no statutes specifically dealing with asbestos and service connection for asbestos related diseases, and the Secretary of VA has not promulgated any specific regulations. However, in 1988, VA issued a circular on asbestos-related diseases that provided guidelines for considering asbestos compensation claims. See Department of Veterans Benefits, Veterans Administration, DVB Circular 21-88-8, asbestos-related diseases (May 11, 1988). The information and instructions contained in the DVB Circular have since been included in VBA's ADJUDICATION PROCEDURE MANUAL, M21-1MR, Part IV, Subpart ii, Chapter 2, Section C. (hereinafter Manual or M 21-1MR). In addition, an opinion by VA's Office of General Counsel discussed the development of asbestos claims. VAOPGCPREC 4-00.

VA has acknowledged that a relationship exists between asbestos exposure and the development of certain diseases, which may occur 10 to 45 years after exposure. See M 21-1MR. When considering VA compensation claims, rating boards have the responsibility of ascertaining whether or not military records demonstrate evidence of asbestos exposure in service and of ensuring that development is accomplished to ascertain whether or not there was pre-service and/or post-service evidence of occupational or other asbestos exposure. A determination must then be made as to the relationship between asbestos exposure and the claimed diseases, keeping in mind the latency and exposure information noted above.

The Manual notes that asbestos particles have a tendency to break easily into tiny dust particles that can float in the air, stick to clothes, and may be inhaled or swallowed. Inhalation of asbestos fibers can produce fibrosis and tumors. The most common disease is interstitial pulmonary fibrosis (asbestosis). Asbestos fibers may also produce plural effusion and fibrosis, pleural plaque, mesotheliomas of pleura and peritoneum, lung cancer, and cancers of the gastrointestinal tract. The Manual also notes that lung cancer associated with asbestos exposure originates in the lung parenchyma, rather than the bronchi. 

Occupations involving asbestos exposure include mining and milling, shipyard and insulation work, demolition of old buildings, construction, manufacture and servicing of friction products such as clutch products and brake linings, manufacture and insulation of roofing and flooring materials, sheet and pipe products, and so forth. High exposure to asbestos and the high prevalence of disease have been noted in insulation and shipyard workers. This is significant considering that, during World War II, several million people were employed in shipyards and U.S. Navy Veterans were exposed to asbestos since it was used extensively in military ship construction. Many of these people have only recently come in for medical attention because the latency period varies from 10 to 45 or more years between first exposure and development of the disease. Also of significance is that the exposure to asbestos may be brief, (as little as a month or two) or indirect (bystander's disease).

The Manual goes on to say that the clinical diagnosis of asbestosis requires a history of asbestos exposure and radiographic evidence of parenchymal lung disease. It should be noted that the pertinent parts of the Manual guidelines of service connection in asbestos-related cases are not substantive rules, and there is no presumption that a Veteran was exposed to asbestos in-service. Dyment v. West, 13 Vet. App. 141, 145 (1999), aff'd, Dyment v. Principi, 287 F. 3d 1377 (Fed. Cir. 2002); VAOPGCPREC 4-2000.
In this case, the Veteran's personnel records are silent for any evidence of assigned duties or work involving known or likely exposure to asbestos. His DD214 Form lists his military occupational specialty (MOS) as a warehouseman, and his personnel records show that he performed duties as a warehouseman, student, and truck driver. As for the truck driver MOS, there is no evidence, and the Veteran has not alleged, that he served as a truck repairman where he would have actually handled the brakes. Instead, he claimed that he was exposed to asbsestos while merely driving a truck. The service treatment records similarly do not document any complaints, treatment, or diagnoses involving asbestos in any way, and a chest x-ray conducted in August 1965 was negative. On separation from service in June 1967, no pertinent abnormalities were found. For these reasons, the Board does not find that the Veteran was exposed to asbestos in service.

As for herbicide exposure, as noted above, the Veteran is not eligible for presumptive service connection due to herbicide exposure for his gout, skin disorder, left knee disorder, or erectile dysfunction. However, the regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. §§ 3.303(d), 3.309(e) (2012); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). In other words, a presumption of service connection provided by law is not the sole method for showing causation in establishing a claim for service connection for disability due to herbicide exposure. See Stefl v. Nicholson, 21 Vet. App. 120 (2007) (holding that the availability of presumptive service connection for some conditions based on exposure to Agent Orange does not preclude direct service connection for other conditions based on exposure to Agent Orange).

The Veteran alleges that he was exposed to Agent Orange during service by handling supplies that had been returned from Vietnam, including bulk fuel equipment, ammunition, tents, vehicles, and clothing. He also claims that he handled drums that he believed were leaking with Agent Orange while stationed in Okinawa. Additionally, he claims he was exposed to Agent Orange through tainted seawater used for cooking and taking showers.

Initially, the Board notes that the Veteran specifically denies that he was exposed to herbicides through actual service in Vietnam. Hearing Transcript, pp. 9, 18. Indeed, his DD 214 Form, service personnel records, and service treatment records do not document any service in the Republic of Vietnam. As such, there is no presumption of herbicide exposure during the Veteran's military service.

As for his contentions that he was exposed to herbicides by handling equipment and material from Vietnam and through tainted seawater, there is no competent evidence to support these allegations. The Veteran's service records, including both medical and personnel records, offer no support in this regard. Moreover, while the Veteran is competent to attest to matters of which he has first-hand knowledge, this does not appear to be the case. Rather, he seems to speculate that he "may" have been exposed to herbicides. He has not provided any affirmative statement that he was told that there was herbicides on the materials he handled or the seawater he drank. Instead, he appears to rely on pure conjecture. Further, provisions in VA's Adjudication Procedures Manual Rewrite M21-1MR, pt. IV, subpt. Ii, ch. 2, § C.10.rr, provide that there are no scientific studies supporting a finding of harmful health effects for secondary or remote herbicide contact, as the Veteran in this case contends. 

Thus, based on all of the evidence, the Board does not find that the Veteran was exposed to asbestos or herbicides in service or that his gout, skin disorder, left knee disorder, and erectile dysfunction were otherwise incurred in service. Accordingly, service connection is not warranted. 


All Claims Decided Herein

As previously discussed, the Board notes that medical opinions have not been obtained for the claims decided herein. However, as described above, the Board finds that the Veteran has no current disability associated with elevated uric acid, elevated PSA, or high cholesterol, and he has no current diagnosis of hepatitis C or generalized arthritis. He was not exposed to asbestos or herbicides in service, and he did not have any disease, injury, or event to which a current skin disorder, gout, a left knee disorder, or erectile dysfunction could be related. Thus, a remand for an examination and/or opinion is not necessary to decide the claims. See 38 C.F.R. § 3.159(c)(4). 
 
Under McLendon v. Nicholson, 20 Vet. App. 79 (2006), in disability compensation claims, VA must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the Secretary to make a decision on the claim. Simply stated, the standards of McLendon are not met in this case.

The Board has considered the decision in Charles v. Principi, 16 Vet. App. 370, 374-75 (2002). However, the outcome of these claims hinge on what occurred, or more precisely, what did not occur, during service. In the absence of evidence of current diagnoses and/or an in-service disease, injury, event, or exposure, referral of this case to obtain an examination and/or an opinion as to the etiology of the Veteran's claimed disability would in essence place the examining physician in the role of a fact finder. This is the Board's responsibility. In other words, any medical opinion which provided a nexus between the Veteran's claimed disabilities and his military service would necessarily be based solely on the Veteran's uncorroborated assertions regarding what occurred in service. The U.S. Court of Appeals for Veterans Claims (Court) has held on a number of occasions that a medical opinion premised on an unsubstantiated account of a claimant is of no probative value. See, e.g., Swann v. Brown, 5 Vet. App. 229, 233 (1993) (generally observing that a medical opinion premised upon an unsubstantiated account is of no probative value, and does not serve to verify the occurrences described); Reonal v. Brown, 5 Vet. App. 458, 61 (1993) (the Board is not bound to accept a physician's opinion when it is based exclusively on the recitations of a claimant that have been previously rejected.)

The holding in Charles was clearly predicated on the existence of evidence of both in-service incurrence and of a current diagnosis. Simply stated, referral of these claims for further examination or a medical opinion under the circumstances here presented would serve no useful purpose. The duty to assist is not invoked, even under Charles, where "no reasonable possibility exists that such assistance would aid in substantiating the claim." See also 38 U.S.C.A. § 5103(a)(2) (West 2002 & Supp. 2012).

Additionally, the Board notes that the Veteran has not alleged, nor does the evidence show, continuity of symptomatology since service. To the contrary, the Veteran has alleged that each of the disorders on appeal arose after service. See Hearing Transcript, pp.29-32. Moreover, the earliest post-service evidence of record is dated from 2004, nearly 40 years after the Veteran's 1967 discharge from service. See Maxon v. Gober, 230 F.3d 1330 (Fed. Cir. 2000) (holding that evidence of a prolonged period without medical complaint after service can be considered along with other factors in the analysis of a service connection claim.) For these reasons, the Board finds that continuity of symptomatology regarding the Veteran's disorders has not been established.

Finally, the Board acknowledges and has considered the lay evidence in support of the appeal. The record contains several lay statements from the Veteran's wife, co-worker, and a fellow volunteer, but these pertain to his back and psychiatric disorders and not to any claim adjudicated on the merits above. 

In reaching each of the decisions above, the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the appellant's claims, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

Service connection for a lumbar spine disorder is dismissed. 

Service connection for elevated uric acid levels is denied.

Service connection for a skin disorder is denied.

Service connection for gout is denied.

Service connection for elevated prostate levels is denied.

Service connection for hepatitis C is denied.

Service connection for a left knee disorder is denied.

Service connection for erectile dysfunction is denied.

Service connection for generalized arthritis is denied.

Service connection for high cholesterol is denied.


REMAND

The Board's review of the claims file reveals that further development is needed prior to adjudication of the claim for service connection for an acquired psychiatric disorder.

The record suggests that there may be outstanding VA treatment records pertinent to the Veteran's claim for an acquired psychiatric disorder. Specifically, in an October 2012 letter, the Veteran's representative attempted to submit an October 1, 2012, VA psychiatric report in support of the Veteran's claim. A review of the claims file, including the Virtual VA file, however, does not reveal this report. The Veteran's representative did later submit VA medical records dated in March 2013, but the record still does not include the VA psychiatric reported dated in October 2012.

VA is held to have constructive notice of the contents of VA records at the time of adjudication. Bell v. Derwinski, 2 Vet. App. 611 (1992). Further, 38 U.S.C. § 5103A(b)(3) requires that VA continue any attempts to get federal records "until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." If the records are unavailable, VA must notify the Veteran of the identity of the records, the efforts VA made to obtain the records, a description of any further action VA will take on the claim, and notice that the Veteran is ultimately responsible for providing the evidence. 38 C.F.R. § 3.159(e)(i)-(iv) (2012). Accordingly, this record must be obtained before the claim for entitlement to service connection for an acquired psychiatric disorder can be fairly adjudicated. 

Accordingly, the case is REMANDED for the following action:

1. Obtain all VA treatment records pertaining to the Veteran dated since February 2012 from Phoenix VAMC. The RO should specifically ensure that the October 1, 2012, psychiatric report of Dr. J. is associated with the file. 

The RO must follow the procedures set forth in 38 C.F.R. § 3.159(c) in regards to requesting records from Federal facilities. All records and/or responses received should be associated with the claims file. If no records can be obtained after an exhaustive search, VA's efforts and any resolution determined must be fully documented for the record, and compliance with the requirements of 38 C.F.R. § 3.159(e)(i)-(iv) (2012) must be achieved.

2. After completing the above action, the RO should conduct any other development as may be indicated by a response received as a consequence of the action taken in the preceding paragraph. 
3. When the development requested has been completed, the case should be reviewed by the RO/AMC on the basis of additional evidence. If the benefits sought are not granted, the Veteran and his representative should be furnished a Supplemental Statement of the Case and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2012).



______________________________________________
JESSICA J. WILLS
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs