# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1251

PEDRO P. DUENAS, APPELLANT,

v.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided    December 15, 2004    )

*Pedro P. Duenas*, *pro se*.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Kathy A. Banfield*, Deputy Assistant General Counsel; and *Cathy A. Chase*, all of Washington, D.C., were on the brief for the appellee.

Before IVERS, *Chief Judge*, and GREENE and HAGEL, *Judges*.

The opinion of the Court is per curiam.  HAGEL, *Judge*, filed a concurring opinion.

PER CURIAM:  Pedro P. Duenas, who is unrepresented, appeals a May 13, 2003, Board of Veterans' Appeals (Board) decision in which the Board denied his claims for service connection for (1) a urinary tract infection, (2) poor vision, (3) a hearing-loss disability, (4) a gastrointestinal disorder, (5) asthma, (6) bronchitis, (7) emphysema, (8) heart disease, and (9) hypertension.  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the May 2003 Board decision.  For the following reasons, the Court will affirm the May 2003 decision with respect to Mr. Duenas's claims for service connection for a urinary tract infection, poor vision, a hearing-loss disability, a gastrointestinal disorder, asthma, bronchitis, emphysema, and hypertension.  The Court will vacate the decision with respect to his claim for service connection for heart disease and will

remand that matter for a more careful consideration of whether Mr. Duenas is entitled to a VA medical examination.

## I.  FACTS

Mr. Duenas had recognized Philippine guerilla service from March 1945 to February 1946, service in the Regular Philippine Army from February 1946 to March 1946, and active-duty service in the U. S. Army from July 1946 to March 1949.  Record (R.) at 26-34, 41-44, 56-57.  In September 1999, he filed with a VA regional office claims for service connection for lung ailments, asthma, hypertension, heart disease, a urinary tract infection, poor vision and hearing, and gastritis.  R. at 16.  Along with his application, he submitted statements from Dr. Florante D. Iglesias, who treated him from 1954 to 1963, and Dr. Reynaldo G. Patriarca, who has treated him since 1964.  R. at 21-23.  (Although the Board stated that Dr. Iglesias's statements indicate treatment from "1944," the Court observes that the statements appear to indicate treatment from 1954.  R. at 7, 22, 74-75.  The Court also notes that the regional office interpreted these statements as indicating treatment from 1954.  R. at 88-89, 114.)  Both doctors stated that they had treated him for asthma and bronchitis.  *Id.*  Dr. Patriarca also reported that Mr. Duenas's complaints of dyspnea, or shortness of breath, and easy fatigability suggest emphysema and that Mr. Duenas may be "prone to . . . hypertension."  *Id.*

During the development of his claims, VA requested Mr. Duenas's service medical records and other records related to him.  R. at 38-39, 47-48.  In response to those requests, VA received the record of his February 1946 discharge examination.  R. at 58.  In that record, under the heading "Record of Physical Examination," the examining U.S. Army Medical Corps officer, in all but one instance, entered either "normal," "none," or "complete" in the spaces provided for comments regarding certain disorders and parts of the body.  *Id.*  The one exception was in the section for comments regarding the "Cardiovascular System," in which the examining medical officer entered the notation, "[t]achycardia."  *Id.*  Tachycardia is defined as "excessive rapidity in the action of the heart."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1655 (28th ed. 1994) [hereinafter DORLAND'S].  The regional office also received an Affidavit for Philippine Army Personnel, dated February 27, 1946, and signed by Mr. Duenas, in which he attested that he had not incurred any wounds or illness since December 1941.  R. at 62.

In addition, VA requested further information from Drs. Iglesias and Patriarca. R. at 68, 70-71. In his response, Dr. Iglesias explained that Mr. Duenas's treatment records were either lost or misplaced but that he recalled treating Mr. Duenas "on and off" from 1954 to 1963 for the illnesses mentioned in the doctor's previous statement. R. at 73-74. Dr. Patriarca responded that his first statement was a sufficient account of Mr. Duenas's diagnoses and notified VA that he could not give a detailed description of his treatment since 1964 because all of Mr. Duenas's records that were more than five years old had been deleted from his file. R. at 77.

The regional office eventually denied Mr. Duenas's claims for service connection, and he appealed its decision to the Board. R. at 85-90. In his appeal to the Board, he made the following statement:

> My ailments have been recurring since service, especially my heart and lung problems. The symptoms have been consistent since I was separated from service up to the present time . . . [and have] consisted of . . . difficulty in breathing, easy fatigability, and worse[,] my recurring rapid heartbeat.

R. at 117.

The Board, in the decision on appeal, determined that VA was not required, under 38 U.S.C. § 5103A(d), to provide Mr. Duenas with a medical examination because "the evidence before the Secretary . . . [did not] indicate that the disorders at issue may be associated with [Mr. Duenas's] active military service." R. at 5. The Board also concluded that an examination was not required because "there [was] no reasonable possibility that an examination would aid in substantiating [Mr. Duenas's] claim[s]." *Id.* With respect to the merits of his claims, the Board concluded that his claimed disabilities "were not incurred in or aggravated by service." R. at 3.

On appeal to this Court, Mr. Duenas raises three arguments. First, he argues that VA did not fulfill its duty to assist him insofar as it failed to provide him with medical examinations with respect to his claims for service connection for heart disease, poor vision, and a hearing-loss disability. Informal Brief (Br.) at 1-2. Second, Mr. Duenas asserts that the Board should not have held his February 1946 affidavit against him. *Id.* at 1. Third, he argues that the opinions of his doctors should be given "credence" with respect to his claims for asthma, bronchitis, and hypertension. *Id.* at 2.

3

The Secretary argues that VA was not required under section 5103A to provide Mr. Duenas with a medical examination. Secretary's Br. at 11-14. The Secretary reasons that an examination was not required with respect to Mr. Duenas's claims of poor vision and a hearing-loss disability because Mr. Duenas "[had] not submitted competent evidence of a current disability" and because the record did not "contain competent evidence that [his] claimed disabilities are associated with his service." *Id.* at 12-13. Similarly, the Secretary contends that VA was not required to provide a medical examination with respect to Mr. Duenas's claim of heart disease because the record did not "contain medical evidence of a current heart disability." Secretary's Br. at 14. Further, the Secretary argues that the Board properly denied Mr. Duenas's claims for service connection because his "claims for the most part are completely lacking in any kind of supportive evidence." *Id.* at 6-7.

## II. ANALYSIS

### A. Duty to Provide a Medical Examination under 38 U.S.C. § 5103A(d)

#### *1. Applicable Laws and Regulations*

Even prior to the enactment of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000), VA had a duty to assist claimants "in developing the facts pertinent to a claim" and that duty to assist included, in certain situations, providing the claimant with a medical examination. 38 U.S.C. § 5107(a) (1999); *see Green v. Derwinski*, 1 Vet.App. 121, 124 (1991). However, under a line of cases decided prior to the enactment of the Veterans Claims Assistance Act of 2000 and culminating in this Court's decision in *Morton v. West*, that duty was not triggered unless a claimant first demonstrated, as a threshold matter, that the claim at issue was well grounded. *Morton*, 12 Vet.App. 477, 486 (1999); *Caluza v. Brown*, 7 Vet.App. 498, 505-06 (1995), *aff'd*, 78 F.3d 604 (Fed. Cir. 1996) (table). A claim was considered to be well grounded if the claimant provided "competent evidence of current disability (a medical diagnosis), . . . of incurrence or aggravation of a disease or injury in service (lay or medical evidence), . . . and of a nexus between the in-service injury or disease and the current disability (medical evidence)." *Caluza*, 7 Vet.App. at 506. Whether the claimant ultimately prevailed on the merits of the claim was a separate matter. *See id.* at 507-13.

4

Displeased with the *Morton* decision, which the Committees on Veterans' Affairs deemed a "significant barrier to veterans who need assistance in obtaining information and evidence in order to receive benefits from . . . VA," Congress eliminated the well-grounded-claim requirement by enacting the Veterans Claims Assistance Act of 2000. *See* 146 CONG. REC. H9913-14 (Oct. 17, 2000) (Explanatory Statement by the House and Senate Committees on Veterans' Affairs); *Luyster v. Gober*, 14 Vet.App. 186, 186 (2000). The Committees also noted that under VA's "claimant friendly" and "non-adversarial" adjudicative system, "VA must provide a substantial amount of assistance to a [claimant] seeking benefits." 146 CONG. REC. at H9913 (citations omitted). Congress highlighted the importance of providing medical examinations and opinions as part of that assistance by establishing standards for determining when VA is required to provide examinations and opinions. *See* 38 U.S.C. § 5103A(d). Under the new legal framework, there is generally no prerequisite to receiving VA assistance; VA is simply required to assist a claimant at the time that claimant files a claim for benefits. *See* 38 U.S.C. § 5103A(a); 38 C.F.R. § 3.159(c) (2003). Whether the claimant prevails on the merits of the claim, however, remains a separate matter.

Under section 5103A(b), VA's duty to assist includes making "reasonable efforts to obtain relevant records," such as service medical records, records from VA health-care facilities, and private medical records, so long as the claimant adequately identifies those records to the Secretary and authorizes the Secretary to obtain them. Depending on the record of evidence provided by the claimant, or after any such development, VA's duty to assist may also include, under section 5103A(d), providing a claimant with a medical examination:

> (1) In the case of a claim for disability compensation, the assistance provided by the Secretary under subsection (a) shall include providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim.
>
> (2) The Secretary *shall* treat an examination or opinion as being necessary to make a decision on a claim for purposes of paragraph (1) if the evidence of record before the Secretary, taking into consideration all information and *lay or* medical evidence (including statements of the claimant)–
>
>> (A) contains competent evidence that the claimant has a current disability, *or persistent or recurrent symptoms of disability*; and
>>
>> (B) indicates that the disability *or symptoms* may be associated with the claimant's active military, naval, or air service; but

5

(C) does not contain sufficient medical evidence for the Secretary to make a decision on the claim.

38 U.S.C. § 5103A(d) (emphasis added); *see Wells v. Principi*, 326 F.3d 1381, 1384 (2003) (holding that proof of current disability alone is insufficient to trigger Secretary's obligation to provide medical examination); *Charles v. Principi*, 16 Vet.App. 370, 374-75 (2002) (holding that appellant's own lay testimony regarding symptoms is sufficient to satisfy section 5103A(d)(2)(B) when symptoms are "capable of lay observation").

The Secretary implemented section 5103A(d) in 38 C.F.R. § 3.159(c)(4)(i), which was made applicable to any claim for benefits pending before the Department and "not decided by VA" as of November 9, 2000. 66 Fed. Reg. 45,620, 45,629-31 (Aug. 29, 2001). Under the regulation, an examination is necessary

> if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim, but:
> (A) Contains competent lay or medical evidence of a current diagnosed disability *or persistent or recurrent symptoms of disability*;
> (B) Establishes that the veteran suffered an event, injury[,] or disease in service . . . ; and
> (C) Indicates that the claimed disability *or symptoms* may be associated with the established event, injury, or disease in service or with another service-connected disability.

38 C.F.R. § 3.159(c)(4)(i) (emphasis added).

Although the regulation contains a requirement that is not present in the statute, namely the requirement that the evidence of record "[e]stablishes that the veteran suffered an event, injury, or disease in service," the U.S. Court of Appeals for the Federal Circuit has held that the regulation is not in conflict with the statute. *Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1355-57 (Fed. Cir. 2003). In this regard, the Court notes that under section 5103A(a)(2) of the statute, the Secretary "is not required to provide assistance to a claimant under this section if no reasonable possibility exists that such assistance would aid in substantiating the claim." Because some evidence of an in-service event, injury, or disease is required in order to substantiate a claim for service connection and because a postservice medical examination could not provide evidence of such past events, a medical examination conducted in connection with claim development could

6

not aid in substantiating a claim when the record does not already contain evidence of an in-service event, injury, or disease. *See Paralyzed Veterans of Am.*, 345 F.3d at 1355-57.

In addition, when deciding whether, under section 5103A(d) and § 3.159(c)(4), to provide a claimant with a medical examination, the Board is required to provide a written statement of the reasons or bases for its conclusion. 38 U.S.C. § 7104(d)(1). That statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza*, 7 Vet.App. at 506. In the absence of a finding of nonprejudicial error, vacatur and remand is warranted where the Board has failed to provide an adequate statement of its reasons or bases for its determinations. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that failure to provide adequate statement of reasons or bases does not necessitate remand "in the face of overwhelming evidence in support of the [Board's] result in a particular case").

*2. Examination with respect to Mr. Duenas's Claim for Service Connection for Heart Disease*

Because Mr. Duenas's appeal was pending before the Board on November 9, 2000, the Board was required to consider section 5103A and § 3.159(c) when it adjudicated his claims. *See* 38 U.S.C. § 5103A(a); *Charles*, 16 Vet.App. at 371-72, 374-75; 38 C.F.R. § 3.159(c). The record before the Secretary contained Mr. Duenas's statement that he now experiences "difficulty in breathing, easy fatigability, and [a] recurring rapid heartbeat." R. at 117. Mr. Duenas further asserted that those symptoms are the symptoms of his claimed disabilities and that he has experienced them since his separation from service. *Id.* The record also contained Mr. Duenas's discharge examination report that includes a notation of an abnormality of his cardiovascular system–tachycardia. R. at 58.

Although the Board concluded that a medical examination was not required with respect to Mr. Duenas's claim for service connection for heart disease, it did not support that conclusion with an adequate statement of reasons or bases. *See* 38 U.S.C. §§ 5103A(d), 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); 38 C.F.R. § 3.159(c)(4). Specifically, although the Board determined

that "the evidence before the Secretary [did] not . . . indicate that the *disorders* at issue may be associated with [Mr. Duenas's] active military service," it did not consider that, under section 5103A(d) and § 3.159(c)(4), the record before the Secretary need only (1) contain competent evidence that he has persistent or recurrent *symptoms* of heart disease and (2) indicate that those *symptoms* may be associated with his active military service. *See* R. at 1-12 (emphasis added).

To support its conclusion properly, the Board was required to address (1) whether difficulty in breathing, easy fatigability, and a recurring rapid heartbeat are symptoms of heart disease; (2) whether Mr. Duenas's statement was competent evidence that he has experienced those symptoms since his separation from service, see 38 U.S.C. § 5103A(d)(2)(A); (3) what tachycardia is and whether the symptoms that Mr. Duenas has experienced since service may be associated with his in-service tachycardia, s*ee* 38 U.S.C. § 5103A(d)(2)(B); and (4) why "no reasonable possibility" existed that an examination would aid in substantiating Mr. Duenas's claim. *See* R. at 5. The Board failed to address any of these issues. *See* R. at 1-12.

### 3. *Examinations with respect to Mr. Duenas's Claims for Service Connection for Poor Vision and a Hearing-Loss Disability*

The record before the Secretary contained Mr. Duenas's statement that he now experiences the symptoms of his claimed disabilities, but his statement does not include a discussion regarding symptoms of poor vision or a hearing-loss disability. R. at 117. Further, although Mr. Duenas asserted that he has experienced the symptoms of his claimed disabilities since his separation from service, the record also contained Mr. Duenas's discharge examination report that indicated that he had 20/20 uncorrected bilateral vision and 15/15 bilateral hearing. R. at 58, 117.

As in the Board's decision to deny an examination with respect to Mr. Duenas's claim for service connection for heart disease, the Board here discussed only whether the *disorders* of poor vision and hearing loss may be associated with Mr. Duenas's service, not whether Mr. Duenas had *symptoms* of those disorders and whether those *symptoms* may be so associated. *See* 38 U.S.C. § 5103A(d)(2)(A) and (B); R. at 1-12. Therefore, the Board failed to provide an adequate statement of reasons or bases to support its conclusion that a medical examination was not required with respect to Mr. Duenas's claims for service connection for poor vision and a hearing-loss disability. *See* 38 U.S.C. §§ 5103A(d), 7104(d)(1); *Allday*, 7 Vet.App. at 527; 38 C.F.R. § 3.159(c)(4).

8

Specifically, the Board did not explain (1) whether Mr. Duenas's statement was competent evidence that he has the symptoms of poor vision and a hearing-loss disability; (2) if it was competent evidence, why those symptoms could not be associated with his service; and (3) why "no reasonable possibility" existed that an examination would aid in substantiating his claims. *See* R. at 1-12.

### 4. *Application of 38 U.S.C. § 7261(b)(2) regarding the Rule of Prejudicial Error*

Although the Board's conclusion with respect to Mr. Duenas's claims for service connection for poor vision and a hearing-loss disability was not supported by an adequate statement of reasons or bases, the Court concludes that any such error was nonpredjudicial. *See* 38 U.S.C. § 7261(b); *Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004). In this regard, even assuming that Mr. Duenas's statement constitutes "competent lay . . . evidence of . . . persistent or recurrent symptoms" of poor vision and a hearing-loss disability, it does not address, and there is no other evidence in the record that reflects, that he "suffered an event, injury[,] or disease in service" that may be associated with those symptoms. *See* 38 C.F.R. § 3.159(c)(4)(i). Therefore, no reasonable possibility was suggested by the record that an examination would have aided in substantiating Mr. Duenas's claims for service connection for either of those two disabilities. *See Paralyzed Veterans of Am.*, 345 F.3d at 1356. With respect to an examination to evaluate Mr. Duenas's claimed heart disease, however, the record does contain an in-service notation of tachycardia, which the examining medical officer noted as an abnormality of the cardiovascular system. R. at 58. Accordingly, the Court cannot speculate that a medical examination would not aid in substantiating Mr. Duenas's claim for service connection for heart disease. *See Allday*, 7 Vet.App. at 527-28. A remand is therefore required but only with respect to Mr. Duenas's claim for service connection for heart disease.

### B. Service Connection

Service connection for VA disability compensation purposes will be awarded to a veteran when the record before the Secretary contains (1) a medical diagnosis of a current disability, (2) medical evidence of incurrence or aggravation of a disease or injury in service, and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See* 38 U.S.C. § 1110; *Caluza*, 7 Vet.App. at 505; 38 C.F.R. § 3.303 (2003).

A finding of service connection generally involves findings of fact. *See Russo v. Brown*, 9 Vet.App. 46, 50 (1996). The Court is required to reverse "a finding of material fact . . . if the

9

finding is clearly erroneous." 38 U.S.C. § 7261(a)(4). "[A] finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). The Court may not substitute its judgment for the factual determinations of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance. *See id.*

Here, because the Court will vacate the Board decision with respect to Mr. Duenas's claim for service connection for heart disease and will remand that matter for readjudication, the Court need only consider his remaining claims. In this regard, the Court notes that the Board denied those claims because it determined that the record before the Secretary did not contain evidence of in-service incurrence or aggravation of a urinary tract infection, poor vision, a hearing-loss disability, a gastrointestinal disorder, asthma, bronchitis, emphysema, or hypertension. R. at 3, 8-11. First, as the Board correctly noted, Mr. Duenas's 1946 discharge examination report reflects normal findings with respect to his genitourinary system, abdominal viscera, and lungs; a negative chest x-ray; 20/20 uncorrected bilateral vision; 15/15 bilateral hearing; and a blood pressure reading that is not indicative of hypertension. R. at 8-11, 58; DORLAND'S at 801. Second, Mr. Duenas indicated in his February 1946 affidavit that he had not incurred any wounds or illness since December 1941. R. at 8-11, 62. Third, Mr. Duenas's doctors, in their statements, do not relate any disabilities that Mr. Duenas may have to his period of service. R. at 8-11, 21-23, 73-79. Finally, although the record contains a statement by Mr. Duenas to the effect that his ailments have been recurring since his service (R. at 117), the Court notes that expert medical evidence is necessary to establish the etiology of those disabilities and that, because Mr. Duenas is not competent to provide such medical evidence, his statements concerning the etiology of his alleged disabilities are insufficient to demonstrate the in-service incurrence of those disabilities. *See Espiritu v. Derwinski*, 2 Vet.App. 492, 494 (1992). Given this evidence and considering the entire record before the Board and the Secretary, the Court cannot conclude that the Board's determination in this regard is clearly erroneous. *See* 38 U.S.C. § 7261(a)(4); *Hersey*, 2 Vet.App. at 94; *Gilbert*, 1 Vet.App. at 52.

With respect to Mr. Duenas's arguments that the Court should not consider his February 1946 affidavit as evidence against his claim and that the Court should give "credence" to his doctors'

statements regarding his claims for service connection for asthma, bronchitis, and hypertension, the Court finds those arguments to be unavailing. Specifically, the Court notes that whether or not it considers the 1946 affidavit as evidence against Mr. Duenas's claims, the record, as the Board correctly noted, does not contain any evidence of incurrence or aggravation of a disease or injury in service. In addition, the doctors' statements do not refer to the issue of whether Mr. Duenas's claimed disabilities were incurred during, or aggravated by, his service.

## III. CONCLUSION

On consideration of the foregoing, the May 13, 2003, Board decision is AFFIRMED to the extent that the Board denied Mr. Duenas's claims for service connection for a urinary tract infection, poor vision, a hearing-loss disability, a gastrointestinal disorder, asthma, bronchitis, emphysema, and hypertension. The decision is VACATED with respect to Mr. Duenas's claim for service connection for heart disease, and that matter is REMANDED for readjudication consistent with this decision. On remand, Mr. Duenas is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Secretary shall proceed expeditiously, in accordance with 38 U.S.C. §§ 5109B, 7112 (expedited treatment of remanded claims).

HAGEL, *Judge*, concurring: I write separately because I believe that a matter of great significance is at issue in this case and wish to elaborate further on the views already expressed. The focus of the Veterans Claims Assistance Act of 2000 was to ensure that all information necessary to making a determination on a claim is obtained and presented to the adjudicator as early on in the decision-making process as possible. One section of that act, now codified in 38 U.S.C. § 5103A(d), was devoted to clarifying VA's duty to assist veterans seeking disability compensation in obtaining medical examinations. Whether or not a veteran receives a VA medical examination can have a significant bearing on the outcome of a veteran's claim for disability compensation. If provided with an examination, a veteran, although certainly not entitled to benefits automatically, is afforded an

11

opportunity to obtain the expert medical evidence that is often necessary to support a claim for benefits. If denied an examination by VA, however, a veteran may be ill suited to acquire that evidence on his or her own. The veteran is faced with the somewhat-daunting task of obtaining and likely paying for a specialized opinion from an expert who may be unfamiliar with the contents of the service medical and other treatment records and who is uninformed regarding the importance of certain standards peculiar to the needs of the VA adjudication system. Under section 5103A(d), the initial decision to provide a veteran seeking disability compensation with an examination rests with VA, and because of the critical impact of such an examination on the outcome of the adjudication, it is crucial that VA take this section into careful consideration when making its decision.

The Board failed to do so in this case. Particularly, the Board completely ignored the language of section 5103A that provides that the necessity of an examination may be triggered by evidence that a claimant has "persistent or recurrent *symptoms* of disability" and that those "*symptoms* may be associated with the claimant's active military . . . service." 38 U.S.C. §§ 5103A(d)(2)(A), (B) (emphasis added).

In its primary opinion, the Court enumerated a number of issues that the Board is required to address on remand. *Ante* at 7-8. Although I am fully cognizant of the principle that "[f]act finding in veterans cases is to be done by the expert [Board], not by [this] Court," *Elkins v. Gober*, 229 F.3d 1369, 1377 (2000), I would like to make the following observations with respect to the issues that this Court has noted. First, difficulty in breathing, easy fatigability, and a recurring rapid heartbeat are described in some texts as symptoms of heart disease. *See* David Schechter, M.D. & Roger Manwaring, *Heart Disease*, *in* 7 ATTORNEYS' TEXTBOOK OF MEDICINE ¶¶ 30.31, .60, .62 (Roscoe N. Gray, M.D., et al. eds., 3d ed. 2003); 5A LAWYERS' MEDICAL CYCLOPEDIA § 34.29 (A), (C), (G), (K) (Richard M. Patterson ed., 5th ed. 2003). Second, it is unclear to me why those three symptoms would not be "capable of lay observation," and therefore why Mr. Duenas would not be competent to testify that he has experienced them.

At this point and in the absence of an explanation by the Board, I cannot conclude that a recurring rapid heartbeat and other symptoms of heart disease allegedly experienced by Mr. Duenas since his military service could not *potentially* be associated with the tachycardia, or excessive rapidity in the action of the heart, experienced by him during service, as described on his discharge

12

examination report. 38 U.S.C. § 5103A(d)(2)(B); 38 C.F.R. § 3.159(c)(4)(i)(C); R. at 58; DORLAND'S at 1655. Further, given these observations and the Board's incomplete discussion of the issues, I also cannot conclude that there is no reasonable possibility that an examination would aid in substantiating Mr. Duenas's claim. *See* 38 U.S.C. § 5103A(a)(2). Under the Court's opinion, the Board must discuss thoroughly the issues raised by the Court and either order a VA examination or explain clearly and comprehensively why, in light of section 5103A(d)(2), no such examination is necessary.