Citation Nr: 1527841 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 09-21 324 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Portland, Oregon


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Oregon Department of Veterans' Affairs


WITNESS AT HEARING ON APPEAL

The Appellant




ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The Veteran served on active duty from June 1942 to November 1945 and from February 1952 to September 1968. He died in August 2007. The appellant claims as his surviving spouse.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2007 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Portland, Oregon, which denied the appellant's claim of entitlement to service connection for the Veteran's death. 

In her May 2009 VA Form 9, the appellant requested a hearing at her local RO. Thus, in June 2011, the appellant appeared at a hearing before a Veterans Law Judge (VLJ). Then, in August 2011, the Board remanded the issue of entitlement to service connection for the cause of the Veteran's death for additional development. In January 2012 the Board requested a VA expert to provide an opinion in the case. The case was subsequently returned to the Board for appellate consideration. In May 2012, the Board issued a decision that denied the claim of entitlement to service connection for the cause of the Veteran's death. 

Then, pursuant to a settlement agreement in the case of National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F.3d 1312 (Fed. Cir. 2013), the Board sent the appellant a letter notifying her of an opportunity to receive a new decision from the Board that would correct any potential due process error relating to the duties of the VLJ that conducted the June 2011 hearing. See Bryant v. Shinseki, 23 Vet. App. 488 (2010) (holding that the requirements of 38 C.F.R. § 3.103(c)(2) apply to a hearing before the Board and that a VLJ has a duty to explain fully the issues and to suggest the submission of evidence that may have been overlooked). In September 2013, the appellant responded that she wished to appear at a new hearing via video conference, and that she wished to have the prior decision vacated and a new one issued in its place. Therefore, in June 2014, the Board vacated the previous decision. The matter was remanded in February 2015 in order to satisfy the appellant's desire to testify in another Board hearing. 

The appellant again provided testimony before the undersigned VLJ during an April 2015 hearing. A copy of the hearing transcript has been associated with the claims folder. 


FINDINGS OF FACT

1. The Veteran died in August 2007; the immediate cause of death was noted as congestive heart failure, due to or as a consequence of immobility as the result of chronic edema/venous stasis and immobility due to chronic arthritis. 

2. At the time of the Veteran's death, service connection was in effect for bilateral hearing loss disability, evaluated as 60 percent disabling; post operative removal of disc L4-5 which chronic lumbar strain, evaluated as 40 percent disabling; right and left saphenous and popliteal vein ligations, each evaluated as 20 percent disabling; removal of exostosis of the left talus, evaluated as 20 percent disabling; osteoarthritis of the right and left knees, each evaluated as 10 percent disabling; hiatal hernia and duodenal ulcer, evaluated as 10 percent disabling; carotidynia, evaluated as noncompensably disabling; and hemorrhoids, evaluated as noncompensably disabling. 
 
3. A service-connected disability did not play a material role in the Veteran's death, render him less able to withstand the effects of his fatal underlying disease or diseases, or hasten his death.


CONCLUSION OF LAW

A service-connected disability did not cause or contribute substantially or materially in causing the Veteran's death. 38 U.S.C.A. §§ 1110, 1131, 1310, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.311, 3.312 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of any information, and any medical or lay evidence, that is necessary to substantiate his or her claim. 38 U.S.C.A. § 5103(a), 38 C.F.R § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183, 186-187 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 

VCAA notice requirements are applicable to all five elements of a service connection claim. Thus, the claimant must be notified that a disability rating and effective date for the award of benefits will be assigned if service connection for a claimed disability is awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006), aff'd sum nom Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007),

VCAA notice should be provided to a claimant before the initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Pelegrini v. Principi, 18 Vet. App. 112, 115 (2004). However, the VCAA notice requirements may be satisfied notwithstanding errors in the timing or content of the notice if such errors are not prejudicial to the claimant. Id at 121. Further, a defect in the timing of the notice may be cured by sending proper notice prior to a re-adjudication of the claim. Mayfield v. Nicholson, 444 F.3d 1328, 1333-1334 (Fed. Cir. 2006). 

In the context of a claim for DIC benefits, which includes a claim of service connection for the cause of death, section 5103(a) notice must be tailored to the claim. The notice should include (1) a statement of the conditions, if any, for which a Veteran was service connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service connected. DIC claim imposes upon VA no obligation to inform a DIC claimant who submits a non-detailed application of the specific reasons why any claim made during the deceased Veteran's lifetime was not granted. Where a claimant submits a detailed application for benefits, VA must provide a detailed response. Hupp v. Nicholson, 21 Vet. App. 342 at 352-353 (2007).

A letter dated in October 2007 discussed the evidence necessary to substantiate the appellant's claim. The evidence of record was listed and the appellant was told how VA would assist her in obtaining additional relevant evidence. She was invited to submit or identify evidence supportive of her claim. The Board notes that the appellant has not been provided with notice pertaining to the manner in which VA establishes effective dates and disability ratings. However, as the Board has determined below that service connection for the cause of the Veteran's death is not warranted, the question of whether such notice has been provided is rendered moot. 

The Board otherwise finds that the content of the notice fully complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. The appellant has been provided with every opportunity to submit evidence and argument in support of her claim and to respond to VA notices. Further, the Board finds that the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of her claim. 

With respect VA's duty to assist, the Board notes that VA and private treatment records have been associated with the claims file. The record also includes service treatment records. These private treatment records include records from Community Health, where the Veteran received care from an acupuncturist. The Veteran's records were reviewed by a VA physician in November 2007 and by a VA cardiology expert in January 2012. The Board finds that in the aggregate, the reports rendered by these physicians provide an adequate basis upon which to decide this claim. The Board notes that the physicians reviewed the record and provided well-reasoned conclusions. The reports of record are thorough and consistent with contemporaneous treatment records, and provide the information necessary to decide the claim. Neither the appellant nor her representative has identified any additional evidence that might support the claim, and the Board is also unaware of any such evidence.

As noted above, the appellant testified at a hearing before the undersigned in which he presented oral argument in support of his claim. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the "hearing officer" who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

In this case, during the hearing, the VLJ fully identified the issue on appeal and asked specific questions directed at identifying the location of any potentially outstanding medical evidence. Neither the appellant nor her representative have asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) , nor have they identified any prejudice in the conduct of the hearing. The hearing focused on the elements necessary to substantiate the claim and the appellant, through her testimony, demonstrated that she had actual knowledge of the elements necessary to substantiate her claim. As such, the Board finds that, consistent with Bryant, the undersigned has complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board can adjudicate the issue addressed in this decision based on the current record.

In short, the Board has carefully considered the provisions of the VCAA, in light of the record on appeal and, for the reasons expressed above, finds that the development of these issues has been consistent with said provisions. The Board is satisfied that any procedural errors in the originating agency's development and consideration of the claims were insignificant and nonprejudicial to the appellant. Accordingly, the Board will address the claim on appeal. 

2. Cause of Death

To grant service connection for the cause of the Veteran's death, it must be shown that a service-connected disability caused the death, or substantially or materially contributed to it. A service-connected disability is one which was incurred in or aggravated by active service, one which may be presumed to have been incurred during such service, or one which was proximately due to or the result of a service- connected disability. 38 U.S.C.A. § 1310; 38 C.F.R. § 3.312.

In cases of service connection for the cause of the death of the Veteran, the first requirement of a current disability will always have been met, the current disability being the condition that caused the Veteran to die; however, the last two requirements for a service connection claim must be supported by the record. See Carbino v. Gober, 10 Vet. App. 507, 509 (1997).

The death of a veteran will be considered as having been due to a service-connected disability when such disability was either the principal or contributory cause of death. 38 C.F.R. § 3.312(a). Here, at the time of Veteran's death, service connection was in effect for bilateral hearing loss disability, evaluated as 60 percent disabling; post operative removal of disc L4-5 which chronic lumbar strain, evaluated as 40 percent disabling; right and left saphenous and popliteal vein ligations, each evaluated as 20 percent disabling; removal of exostosis of the left talus, evaluated as 20 percent disabling; osteoarthritis of the right and left knees, each evaluated as 10 percent disabling; hiatal hernia and duodenal ulcer, evaluated as 10 percent disabling; carotidynia, evaluated as noncompensably disabling; and hemorrhoids, evaluated as noncompensably disabling. 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b). It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant; however, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 3.102.

The Veteran's August 2007 death certificate indicates that the primary cause of his death was congestive heart failure, due to or as a consequence of immobility as the result of chronic edema/venous stasis and immobility due to chronic arthritis.

Initially, the Board notes that the appellant does not asserts, and the record does not demonstrate, that the cause of the Veteran's death is directly related to his period of military service. Notably, there are no service treatment records in this case that would indicate whether the Veteran was treated for heart-related disorder in service, or whether he had a heart-related disorder at service separation. Although the Veteran complained of left-side chest pain in 1964, an echocardiogram study was normal. No subsequent treatment records shows treatment or diagnosis for a heart-related problem. There also are no post-service treatment records that would indicate continuity of heart or cardiovascular symptomatology after service. Rather, the evidence of record does not demonstrate that the Veteran was treatment for congestive heart failure until decades after his separation from service. There is no medical evidence showing that an onset of any heart-related problems, during the Veteran's period of service or within the first year after his separation from service. 38 C.F.R. §§ 3.303, 3.307, 3.309. There is also no medical evidence establishing a possible relationship between any disorder that has been found to have caused or contributed to cause the Veteran's death and the Veteran's periods of active service. The evidence of record does not demonstrate that the cause of the Veteran's death was directly related to his period of service. See 38 C.F.R. §§ 3.303, 3.312. 

Instead, the appellant contends that the Veteran's fatal heart disease was related to his service-connected leg disabilities in that the pain caused by those disabilities rendered him sedentary. As noted, at the time of the Veteran's death, service connection was in effect for bilateral hearing loss disability, post operative removal of disc L4-5 which chronic lumbar strain, right and left saphenous and popliteal vein ligations, removal of exostosis of the left talus, osteoarthritis of the right and left knees, hiatal hernia and duodenal ulcer, carotidynia, and hemorrhoids.

Records from Samaritan Pacific Health Services indicate that the Veteran was admitted to Samaritan North Lincoln Hospital on July 3, 2007. He was placed in the intensive care unit and started on treatment for congestive heart failure and chronic obstructive pulmonary disease exacerbations. Echocardiogram showed severe right-sided heart failure. His history was noted to be positive for congestive heart failure, gastrointestinal bleed, renal failure, and shortness of breath. He reported a history of coronary artery bypass graft. The admission notes also indicate denial of any recent joint or musculoskeletal changes. Physical examination revealed 3+ chronic edema of the lower extremities and marked tenderness to palpation of the area. Pulses were diminished in the feet, but the skin was warm and dry. 

A physical therapy note dated on July 10, 2007 indicates that the Veteran had sufficient strength to transfer to standing but that both he and his wife expressed anxiety. The provider noted that the Veteran was to be discharged home the following day and that the evaluation was only to assess his current status. She recommended transport home via stretcher. 

The July 11, 2007 discharge report discusses the hospital course and lists discharge diagnoses as chronic obstructive pulmonary disease exacerbation, end stage lung disease; congestive heart failure exacerbation; gastrointestinal bleed with history of peptic ulcer diseases; blood loss anemia; chronic renal insufficiency; hypertension; depression; osteoarthritis; history of chronic back pain; and history of abdominal aortic aneurysm. 

A July 19, 2007 VA social work note indicates that the Veteran was at home on hospice care. In August 2007, the appellant called to inform a VA physician that the Veteran had passed away at home. She related that he was coherent and fairly comfortable.

In November 2007 a VA physician reviewed the Veteran's claims file. She noted that the death certificate listed congestive heart failure as the cause of death, due to chronic edema/venous stasis due to immobility from chronic arthritis, and that contributing causes included chronic obstructive pulmonary disease and chronic varicose veins. She acknowledged that the Veteran was in receipt of service connection for a multitude of conditions, including saphenous and popliteal vein ligations and carotidynia. She reviewed the terminal records. She also noted that the Veteran had been seen at a VA vascular clinic several years previously, and that providers there concluded that the Veteran's leg pain during ambulation was due to arthritis as opposed to a vascular condition. She indicated that, in spite of what was written on the Veteran's death certificate, she could think of no medical rationale whereby chronic arthritis or immobility might lead to death from congestive heart failure. She likewise concluded that the Veteran's chronic edema or venous insufficiency were not likely to cause or contribute to congestive heart failure at the end of life. She also concluded that the Veteran's right carotidynia did not contribute to the Veteran's death. 

At her June 2011 hearing, the appellant testified that the Veteran's back and leg pain became so bad that he would not leave his bed, even to walk to the bathroom. She stated that she was unsure why he was admitted to North Lincoln Hospital. She indicated that once he was sent home from the hospital, experienced some improvement, but that he then declined quickly. She described his legs as very swollen and painful. She argued that with his back and leg pain the Veteran became inactive and experienced lack of circulation in his legs, and led to heart problems. 

In January 2012 a VA cardiologist reviewed the Veteran's records. He indicated that according to the death certificate, the immediate cause of death was congestive heart failure. He noted that the wording on the certificate brought to question whether congestive heart failure could be due to or as a consequence of immobility due to chronic edema/venous stasis and immobility due to chronic arthritis. He indicated that heart failure was a complex clinical syndrome that could result from any structural or functional cardiac disorder. He noted that while nearly any form of heart disease might ultimately lead to heart failure syndrome and chronic edema may represent a manifestation of congestive heart failure, it was unlikely that congestive heart failure could be due to or a consequence of immobility due to chronic edema/ venous stasis or chronic arthritis. He pointed out that severe pulmonary hypertension was noted on echocardiogram dated on July 5, 2007 might cause right-sided heart failure consistent with the observed marked dilation of right-sided chambers with severe tricuspid regurgitation. He concluded that it was unlikely that congestive heart failure could be due to or a consequence of immobility due to chronic edema/venous stasis or chronic arthritis.

The appellant was afforded another Board hearing in April 2015. At that time, she provided similar testimony regarding her belief that the severity of the Veteran's service-connected disabilities contributed to his heart problems and ultimately led to his death. She testified that the Veteran's service connected disabilities resulted in insufficient blood flood to his legs, which contributed to his congestive heart failure. She further stated that she informed had been informed by the Veteran's treating private acupuncturist, M.F., that the Veteran's service-connected disabilities contributed to his heart problems, and a medical statement to that extent should be in the claims folder. (Notably, a review of the claims folder shows that only treatment records from Community Health with M.F., who holds a master's degree in acupuncture and Oriental medicine; however, none of these private treatment records indicate an etiology for the Veteran's congestive heart failure.) The appellant was further advised of her ability to submit additional evidence, and the record was held open for an additional 60 days to allow such a submission, but none was received. 

Upon careful review of the record, the Board has concluded that service connection for the cause of the Veteran's death is not warranted. As noted above, at the time of his death, the Veteran was in receipt of service connection for numerous disabilities, to include a low back disability, knee disabilities, and residuals of vein ligations in each leg. However, the most probative evidence establishes that no service-connected disability was the immediate or underlying cause of death, or that it was etiologically related to the Veteran's death. 

In reaching its conclusion, the Board notes that two VA physicians reviewed the file and concluded that the Veteran's fatal congestive heart failure was not related to a service-connected disability, to include the Veteran's low back and bilateral leg disabilities. In rendering their opinions, the VA physicians reviewed the claims file, discussed the relevant findings, and provided an underlying rationale for their conclusions. Therefore, the Board finds these opinions to be of greater probative value regarding the cause of the Veteran's death than the appellant's unsupported assertions.

The Board notes that the appellant has alleged that the Veteran's treating acupuncturist informed them that the Veteran's heart problems are associated with his bilateral leg disability. The Board finds this statement to be too attenuated to constitute competent medical evidence of nexus for secondary service connection. See Robinette v. Brown, 8 Vet. App. 69, 77 (1995) (finding that the connection between what a physician said and the layman's account of what he purportedly said, filtered through a layman's sensibilities, is too attenuated and inherently unreliable to constitute medical evidence). Moreover, the Board has reviewed the available private treatment records, and none of these records indicate an etiological link between the Veteran's heart problems and his service-connected disabilities. Notably, the appellant was advised to submit additional evidence in support of her claim, and date she has not. 

Indeed, there is no competent evidence of record showing that the Veteran's service-connected disabilities caused or contributed to the cause of his death. Competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. See Duenas v. Principi, 18 Vet. App. 512, 520 (2004). Lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (finding that the Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau).

The Board has considered the appellant's assertions and acknowledges that she is competent to report her own observations with respect to the Veteran's symptoms. However, it must also be considered that she does not possess any medical expertise with regard to determining whether there is an etiological relationship between the Veteran's fatal heart disease and any service-connected disability. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (explaining in footnote 4 that a Veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). 

Therefore, the Board ultimately places far more weight on the opinion of the VA physicians, who considered her assertions, but also considered the nature of the Veteran's service-connected disabilities and the nature of the disease that immediately caused his death. Based on such factors, they ultimately concluded that it was unlikely that the Veteran's service-connected back and lower extremity disabilities caused or contributed to his demise. 

In summary, the evidence clearly establishes that the Veteran's service-connected back and lower extremity disabilities neither caused nor materially contributed to his death. Rather, the competent evidence clearly establishes that the Veteran's death was not related to service or service-connected disability. Accordingly, the claim of entitlement to service connection for the cause of the Veteran's death must be denied.


ORDER

Entitlement to service connection for the cause of the Veteran's death is denied.



____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs