Citation Nr: 1702605 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 16-42 035 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for prostate cancer, to include as due to Agent Orange exposure. 

2. Entitlement to an evaluation in excess of 60 percent for a heart disability. 

3. Entitlement to a total disability rating based on individual unemployability (TDIU). 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

H. Hoeft


INTRODUCTION

The Veteran had active military service from July 1965 to July 1967, including service in the Republic of Vietnam.

The present matters come to the Board of Veterans' Appeals (Board) on appeal following January 2016, July 2016, August 2016, and November 2016 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2015).

The issues of entitlement to a higher evaluation for a heart disability and entitlement to a TDIU rating are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

The Veteran has not had a diagnosis of prostate cancer at any point during the appeal period.


CONCLUSION OF LAW

The criteria for service connection for prostate cancer have not been met. 38 U.S.C.A. §§ 1110, 1112, 1116, 5107 (West 2015); 38 C.F.R. §§, 3.303, 3.307, 3.309 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100 , 5102, 5103A, 5107, 5126 (West 2015) provides VA's duties to notify and assist a claimant with development of a claim for compensation benefits. See also 38 C.F.R. §§ 3.102, 3.159, 3.326 (2016). The Veteran filed his claim using the Fully Developed Claim Process, submitted VCAA notice responses, and presented appropriate evidence/arguments. 

Regarding the duty to assist, VA must make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. In connection with the claims being decided on appeal, the evidence of record includes the Veteran's service treatment records, statements from the Veteran and his representatives, VA treatment records, and private treatment records. 

The RO did not arrange for a VA examination with respect to the prostate cancer claim. The Board has considered whether such examination is necessary. Absent any competent (medical) evidence suggesting that he has a current prostate cancer diagnosis, an examination to secure a medical nexus opinion is not necessary, as even the low standard endorsed by the U.S. Court of Appeals for Veterans Claims in McLendon v. Nicholson, 20 Vet. App. 27 (2006), is not met. See 38 C.F.R. § 3.159 (c)(4); Duenas v. Principi, 18 Vet. App. 512, 516 (2004).

Therefore, no further assistance to the Veteran with the development of evidence is required. 38 U.S.C.A. § 5103A (a)(2); 38 C.F.R. § 3.159 (d); see Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).


Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303 (b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2014) (holding that only conditions listed as chronic diseases in § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303 (b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

Moreover, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and cancer becomes manifest to a degree of 10 percent within one year from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

A Veteran who, during active service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307 (a)(6)(iii). As the Veteran served in Vietnam, exposure to herbicides is conceded. 

Diseases associated with exposure to certain herbicide agents, listed in 38 C.F.R. § 3.309 (e), will be considered to have been incurred in service under the circumstances outlined in that section even though there is no evidence of such disease during the period of service. The list of the diseases that are related to herbicide exposure includes prostate cancer. 38 C.F.R. § 3.309 (e). 

Prostate Cancer

The Veteran contends that he developed prostate cancer as a result of his exposure to herbicides in-service. Again, he served in the Republic of Vietnam and exposure to herbicides is thus conceded. However, as explained below, the Veteran does not have a current prostate cancer disability for which service connection can be granted. 

Service treatment records do not contain any complaints, treatment, findings or diagnoses of prostate cancer. 

After service, on VA genitourinary examination in December 2010, the Veteran was diagnosed with benign prostatic hyperplasia (BPH), or an enlarged prostate. The prostate examination was otherwise normal. (Note: service connection for BPH/enlarged prostate has been expressly considered and denied in an unappealed May 2011 rating decision). 

Post-service private treatment records show that the Veteran has been diagnosed with primary site pancreatic cancer; however, there are no complaints, findings, treatment, or diagnoses with respect to cancer of the prostate. 

To the extent the Veteran, himself, claims he has prostate cancer, a lay person is competent to establish a diagnosis in the following circumstances: (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d at 1372, 1376-77 (Fed. Cir. 2007).

In this case, the diagnosis of prostate cancer is a complex finding that goes beyond the mere observation of symptoms by a lay person--in other words, the clinical pathology of cancer disorders is not readily recognizable by a layperson, such as varicose veins or acne. Thus, the lay evidence here does not establish current disability in this case. 

Accordingly, after review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against finding that the Veteran has a current prostate cancer diagnosis. In this regard, the threshold question in any claim seeking service connection is whether the Veteran, in fact, has the disability for which service connection is sought. The Board finds it significant that the Veteran has presented no competent evidence dated during the appeal period showing an actual diagnosis of prostate cancer. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Therefore, in the absence of evidence of diagnosed prostate cancer, the preponderance of evidence is against service connection and the claim is denied. 38 U.S.C.A. § 5107 (b); see also Brammer v. Derwinski, 3 Vet. App. at 225. 


ORDER

Service connection for prostate cancer is denied. 


REMAND

Higher Rating for Coronary Artery Disease with Atrial Fibrillation 

The Veteran seeks a higher rating for his service-connected heart disability, diagnosed as coronary artery disease with atrial fibrillation. He was last afforded a VA heart examination in 2010, nearly seven years ago. Although the record currently contains a 2016 Ischemic Heart Disease DBQ (completed by a private physician, Dr. Pearce), the DBQ report reflects that the most recent stress exercise test to assess METs was performed in 2013 (which is not of record), and the most recent testing of left ventricular ejection fraction was conducted in 2006. See also January 2017 American Legion Appellate Brief (requesting new VA heart examination to assess current severity). 

Given that the most recent VA heart examination of record is nearly seven years old, and further considering that the 2016 private DBQ report is based on outdated data/testing, the Board finds that the Veteran should be afforded a new VA examination to determine the current nature and severity of his service-connected coronary artery disease with atrial fibrillation. See, e.g., Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995).

In addition, as the case is being remanded, the Veteran should be given another opportunity to identify any records of private medical treatment that he would like to submit or have VA obtain, especially since it appears that he is currently undergoing private cardiac treatment from Dr. Pearce. Any VA treatment records dated since 2016 should also be obtained.

TDIU

The evidence reflects that the Veteran last worked in January 2007; he asserts that his service-connected heart disability left him short of breath, weak, and unable to do his job as he had very little strength in his back and legs. Notably, the Veteran's only service connected disability is coronary artery disease with atrial fibrillation, which is currently rated as 60 percent disabling. The Veteran thus currently meets the minimum percentage requirements for a TDIU set forth in 38 C.F.R. § 4.16 (a). 

In January 2016, the Veteran's private physician (see January 2016 DBQ) stated that the Veteran's ability to work was impacted by his heart condition to the extent that it resulted in shortness of breath on exertion and fatigue. The RO obtained a VA opinion in July 2016, in which the examiner (who did not physically examine the Veteran in making his determination) found that "the Veteran's CAD nor A-fib should prevent him from performing sedentary work." The examiner did not provide any further rationale for his opinion. In the January 2017 Appellate Brief, the Veteran's representative argued that the July 2016 was essentially incomplete/inadequate. 

In light of the foregoing findings and assertions, the Board finds that an opinion should be obtained on remand regarding the Veteran's functional limitations due to his service-connected heart disability and any resulting occupational impairment.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Send a letter to the Veteran requesting him to identify any relevant outstanding private treatment records and any other relevant evidence pertaining to his claim of entitlement to an initial rating in excess of 60 percent for coronary artery disease with atrial fibrillation, to specially include treatment records from Dr. C. Pearce. He should be invited to submit this evidence himself or to request VA to obtain it on his behalf. Authorized release forms (VA Form 21-4142) should be provided for this purpose. 

If the Veteran properly fills out and returns any authorized release forms for private records identified by him, reasonable efforts should be made to obtain such records and associate them with the claims file. At least two such efforts should be made unless it is clear that a second effort would be futile. 

If attempts to obtain any records identified by the Veteran are not successful, he must be notified of this fact and all efforts to obtain them must be documented and associated with the claims file.

2. Make arrangements to obtain the Veteran's complete VA treatment record dated since November 2016. 

3. Thereafter, schedule the Veteran for an appropriate VA examination to assess the current severity of his coronary artery disease with atrial fibrillation. The electronic claims file, including a complete copy of this remand, must be made available to and reviewed by the examiner. The examination should include any diagnostic testing or evaluation deemed necessary.

The examiner must identify all present symptoms and manifestations attributable to the Veteran's service-connected coronary artery disease and atrial fibrillation, in accordance with the rating criteria specified at 38 C.F.R. § 4.104, Diagnostic Codes (DCs) 7005, 7010, and 7011 (2016), as appropriate. 

The examiner should provide, to the greatest extent possible, comprehensive information that addresses all components of the applicable rating criteria - to include an assessment of exercise capacity in terms of METs (metabolic equivalent); left ventricular function; any evidence of congestive heart failure; and any associated symptoms including dyspnea, fatigue, angina, dizziness, or syncope, and its frequency. 

The examiner should also note the whether there is paroxysmal atrial fibrillation or another supraventricular tachycardia present, with more than four episodes per year documented by ECG or Holter monitor; or whether there is permanent atrial fibrillation (lone atrial fibrillation), or; one to four episodes per year of paroxysmal atrial fibrillation or other supraventricular tachycardia documented by ECG of Holter monitor. 

Preferably, the appropriate Disability Benefits Questionnaire (DBQ) should be used for this purpose. 

Then, based on the results of the examination, the examiner is asked to provide an assessment of whether the service-connected heart disability has affected the Veteran's ability to work by assessing his occupational impairment, if any. In providing the opinion, the examiner is asked to take the Veteran's level of education, special training, and previous work experience into consideration, but disregard the Veteran's age or any impairment caused by nonservice-connected disabilities. The examiner is requested to provide a complete rationale for any opinion expressed, based on the examiner's clinical experience, medical expertise, and established medical principles. If an opinion cannot be made without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made.

4. Thereafter, readjudicate the Veteran's claims. If the benefits sought on appeal are not granted in full, the Veteran and his representative should be issued a supplemental statement of the case and provided an opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).



_________________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2015).