Citation Nr: 1719110 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 16-07 693 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an initial compensable disability rating for bilateral hearing loss. 

2. Entitlement to service connection for lumbar spine disability.

3. Entitlement to service connection for a scar on the upper lip.

4. Entitlement to service connection for left shoulder disability, to include degenerative joint disease. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States




ATTORNEY FOR THE BOARD

C. L. Krasinski, Counsel


INTRODUCTION

The Veteran had active service from January 1952 to September 1953. He was awarded a Purple Heart and Combat Infantryman's Badge for service in Korea. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from November 2012, February 2013, and April 2014 rating decisions by the San Juan, Puerto Rico, Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran did not perfect an appeal of the issues of entitlement to service connection for right shoulder disability and sore throat, and entitlement to higher disability ratings for shell fragment wound left anterior leg tibialis anterior muscle and gastroesophageal reflux disease (GERD).. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.1103 (2016). The Veteran specified which issues he was appealing and he did not list these issues in the February 2016 VA Form 9. Therefore, the appeal of these issues were not perfected and are not before the Board. 

Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) was granted from May 23, 2014. See the September 2014 rating decision. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for left shoulder disability and lumbar spine disability are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the appellant if further action is required.



FINDINGS OF FACT

1. For the entire appeal period, the service-connected bilateral hearing loss is shown to have been manifested by hearing acuity measured at a Level I, II, and III designations in the right ear and Level I designation in the left ear.

2. The Veteran engaged in combat with the enemy during active service. 

3. It is as likely as not that a scar of the upper lip was incurred in active service and is related to injury in active service. 


CONCLUSIONS OF LAW

1. For the entire appeal period, the criteria for the assignment of an initial compensable rating for the service-connected bilateral hearing loss have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.85, 4.86, Diagnostic Code 6100 (2016).

2. By extending the benefit of the doubt to the Veteran, the criteria for service connection for a scar of the upper lip have been met. 38 U.S.C.A. §§ 1110, 1154, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

1. Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VA notice letters must also include notice of a disability rating and an effective date for award of benefits if service connection is granted. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

As the Board is granting the claim for service connection for a scar of the upper lip, the claim is substantiated, and there are no further actions on the part of VA to notify or assist. 

VA has met its duty to notify for the claim for a higher initial rating for bilateral hearing loss. The Board finds that the Veteran has been provided adequate notice. The record shows that the Veteran received notice letters pertaining to all issues on appeal, advising what the evidence must show and of the respective duties of VA and the claimant in obtaining evidence. See the notice letters dated in February 2014, April 2014, and June 2014. 

The Board also finds the Veteran has been provided adequate assistance in response to the claims. The Veteran's available service treatment records are associated with the claims file. The record shows that complete copies of the Veteran's service treatment records are unavailable since this is a fire-related case and the records have been destroyed. VA obtained copies of pertinent Office of Surgeon General records which notate some medical treatment in active service. The Veteran was notified of the search results and the unavailability of the service treatment records. 

VA treatment records dated from 2007 to 2016 are associated with the file. The Veteran submitted the results of a private audiometric evaluation in support of his claim. VA made an attempt to obtain copies of the Veteran's Social Security Administration (SSA) records and SSA notified VA that no records are available. The Board has reviewed the Veteran's statements and medical evidence of record and concludes that there is no outstanding evidence with respect to the claim. In February 2014, June 2014, August 2014, and November 2015, the Veteran informed VA that he had no additional information or evidence to submit in support of his claim.

The Veteran underwent a VA audiometric examinations in 2013 and 2014 to obtain medical evidence as to the nature and severity of the service-connected hearing loss. The Board finds that the VA examinations are adequate for adjudication purposes. The examinations were performed by licensed audiologists based on a review of claims file, a solicitation of history and symptomatology from the Veteran, and a thorough examination of the Veteran. The examination reports are fully descriptive, and address the criteria necessary to effectively evaluate the Veteran's service-connected disability. The Board finds that for these reasons, the Veteran has been afforded adequate examinations. The Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The duties to notify and assist the Veteran have been met. No further notice or assistance to him is required in this appeal.

2. Higher Initial Rating for Bilateral Hearing Loss

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities. 38 C.F.R. Part 4. The Board determines the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, and the assigned rating is based, as far as practicable, upon the average impairment of earning capacity in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.10. 

Where there is a question as to which of two ratings should be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified. However, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. Under 38 C.F.R. § 4.20, evaluation by analogy is permitted where the rating schedule does not provide a specific diagnostic code to rate the disability. 38 C.F.R. § 4.20.

In deciding this appeal, VA has specifically considered whether separate ratings for different periods of time are warranted, assigning different ratings for different periods of the Veteran's appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008). 

In cases where the evaluation of hearing loss is at issue, an examination for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a pure tone audiometry test. Examinations will be conducted without the use of hearing aids. 38 C.F.R. § 4.85 (a).

A rating for hearing loss is determined by a mechanical application of the rating schedule to the numeric designations assigned based on audiometric test results. See Lendenmann v. Principi, 3 Vet. App. 345 (1992).

Evaluations of defective hearing range from noncompensable to 100 percent. The basic method of rating hearing loss involves audiological test results of organic impairment of hearing acuity as measured by the results of controlled speech discrimination tests (Maryland CNC), together with the average hearing threshold level as measured by puretone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 Hertz. Puretone threshold average is the sum of puretone thresholds at 1000, 2000, 3000, and 4000 Hertz divided by four. To evaluate the degree of disability of service-connected hearing loss, the rating schedule establishes eleven auditory acuity levels ranging from numeric level I for essentially normal acuity, through numeric level XI for profound deafness. See 38 C.F.R. § 4.85, Diagnostic Code 6100.

The horizontal lines in Table VI (in 38 C.F.R. § 4.85 ) represent eleven categories of the percentage of discrimination based on the controlled speech discrimination test. The vertical columns in Table VI represent eleven categories of decibel loss based on the pure tone audiometry test. The numerical designation of impaired efficiency (I through XI) will be determined for each ear by intersecting the horizontal row appropriate for the percentage of discrimination and the vertical column appropriate to pure tone decibel loss.

For example, with the percentage of discrimination of 70 and an average pure tone decibel loss of 64, the numeric designation level is "V" for one ear. The same procedure will be followed for the other ear. 38 C.F.R. § 4.85 (b).

The percentage evaluation will be found from Table VII (in 38 C.F.R. § 4.85 ) by intersecting the horizontal row appropriate for the numeric designation for the ear having the better hearing and the vertical column appropriate to the numeric designation level for the ear having the poorer hearing.

For example, if the better ear has a numeric designation level of "V," and the poorer ear has a numeric designation level of "VII," the percentage evaluation is 30 percent. 38 C.F.R. § 4.85 (e), Diagnostic Code 6100.

The current rating criteria include an alternate method of rating exceptional patterns of hearing as defined in 38 C.F.R. § 4.86 (puretone threshold of 55 decibels or more at 1000, 2000, 3000, and 4000 Hertz; puretone threshold of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz).

The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against the assignment of a compensable disability rating for the service-connected bilateral hearing loss at any time during the appeal period. 

On the authorized audiological evaluation in December 2013, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
40
45
65
65
70
LEFT
40
45
50
60
65

Speech audiometry revealed speech recognition ability of 100 percent in the right ear and 96 percent in the left ear. The average puretone threshold for the right ear was 61 decibels and 55 decibels in the left ear. 

The findings of the December 2013 evaluation translates to level II hearing loss in the right ear and I in the left ear when applied to Table VI of the rating schedule. This level of hearing loss warrants a zero percent rating and no higher under Table VII of the rating schedule. Therefore, an initial compensable disability evaluation is not warranted based upon this evaluation under Diagnostic Code 6100. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

On the authorized audiological evaluation in February 2014, pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
35
40
60
55
55
LEFT
30
35
50
60
60

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 100 percent in the left ear. The average puretone threshold for the right ear was 53 decibels and 51 decibels in the left ear. 

The findings of the February 2014 evaluation translates to level I hearing loss in the right ear and I in the left ear when applied to Table VI of the rating schedule. This level of hearing loss warrants a zero percent rating and no higher under Table VII of the rating schedule. Therefore, an initial compensable disability evaluation is not warranted based upon this evaluation under Diagnostic Code 6100. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

On the authorized audiological evaluation in September 2014, pure tone thresholds, in decibels, were as follows:





HERTZ



500
1000
2000
3000
4000
RIGHT
35
40
60
55
55
LEFT
35
35
50
60
60

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 96 percent in the left ear. The average puretone threshold for the right ear was 52.5 decibels and 51.25 decibels in the left ear. 

The findings of the September 2014 evaluation translates to level I hearing loss in the right ear and I in the left ear when applied to Table VI of the rating schedule. This level of hearing loss warrants a zero percent rating and no higher under Table VII of the rating schedule. Therefore, an initial compensable disability evaluation is not warranted based upon this evaluation under Diagnostic Code 6100. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

The Veteran submitted a private audiological evaluation dated in March 2012 in support of his claim. Pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
10
25
55
50
55
LEFT
20
30
40
50
55

Speech audiometry revealed speech recognition ability of 76 percent in the right ear and 92 percent in the left ear. The average puretone threshold for the right ear was 46.25 decibels and 43.75 decibels in the left ear. 

The findings of the March 2012 evaluation translates to level III hearing loss in the right ear and I in the left ear when applied to Table VI of the rating schedule. This level of hearing loss warrants a zero percent rating and no higher under Table VII of the rating schedule. Therefore, an initial compensable disability evaluation is not warranted based upon this evaluation under Diagnostic Code 6100. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

Regarding the functional effect the hearing loss has on the Veteran's occupation, the VA examination report noted that the hearing loss impacted the Veteran's ability to work in that he had difficulty with communication skills. The Veteran has been issued hearing aids. See Martinak v. Nicholson, 21 Vet. App. 447 (2007).

Therefore, on this record, an initial compensable disability evaluation is not warranted for the bilateral hearing loss under Diagnostic Code 6100 at any time during the appeal period. 38 C.F.R. § 4.85, Diagnostic Code 6100. 

In summary, for the reasons expressed, the Board concludes that the preponderance of the evidence is against the assignment of an initial compensable disability rating for the service-connected bilateral hearing loss. Since the preponderance of the evidence weighs against the claim, the benefit of the doubt doctrine is not for application. Gilbert, 1 Vet. App. 49. Accordingly, on this record, the claim for a higher initial rating for bilateral hearing loss must be denied.

The Board has considered whether referral for an extraschedular rating is warranted for the service-connected bilateral hearing loss. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008). Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Id. at 115.

Here, the schedular rating criteria used to rate the Veteran's bilateral hearing loss reasonably describe and assess his disability levels and symptomatology. The Veteran's symptoms are contemplated by the rating schedule; therefore, the assigned schedular evaluation is adequate to rate the disability. The schedular rating criteria reasonably describe the Veteran's disability level and symptomatology, and provide for a higher rating for additional or more severe symptoms than currently shown by the evidence. Hence, as the schedular rating reasonably describes the Veteran's disability picture, referral for extraschedular consideration is not warranted. 

According to Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321 (b) ] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321 (b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria.

3. Service Connection for Scar on the Upper Lip

Service connection will be granted for disability resulting from a disease or injury incurred in or aggravated by military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection requires competent evidence showing, (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004), citing Hansen v. Principi, 16 Vet. App. 110, 111 (2002); see also Caluza v. Brown, 7 Vet. App. 498 (1995). 

In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service connection of any disease or injury alleged to have been incurred in or aggravated by such service, satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service connection in each case shall be recorded in full. 38 U.S.C.A. § 1154 (b) (West 2014); 38 C.F.R. § 3.304 (d) (2016). 

The ordinary meaning of the phrase "engaged in combat with the enemy," as used in 38 U.S.C. § 1154 (b), requires that a veteran have participated in events constituting an actual fight or encounter with a military foe or hostile unit or instrumentality. The issue of whether any particular set of circumstances constitutes engagement in combat with the enemy for purposes of section 1154(b) must be resolved on a case-by-case basis. See VAOPGCPREC 12-99 (October 18, 1999).

Once the evidence has been assembled, it is the Board's responsibility to evaluate the evidence. 38 U.S.C.A. § 7104(a). The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.102, 4.3. 

The Veteran asserts that he engaged in combat with the enemy while serving in Korea and he sustained burns to the upper lip from a mortar explosion. The Veteran asserts that he sustained injuries while in combat in Korea. He stated that he was hit by a mortar and had to run through a fire and he ended up wounded and had to seek medical care. He stated that he was burned in the face and he ended up having a scar on his upper lip. See the Veteran's statement translated in May 2017. At the February 2012 VA examination, the Veteran stated that a mortar exploded near him and another 15 soldiers and the explosion burned a rice plantation and he was burned. He stated that this incident happened in October 1952. The Veteran reported that he felt ashamed of having a scar in his upper lip since the incident and that was why he always keep his moustache trying to cover it. The Veteran stated that he visited a plastic surgeon due to the way he feels having the scar in upper lip but he did not accept reconstructive surgery due to the amount of money that he was supposed to pay for it. The Veteran stated that the plastic surgeon applied injections and the scars in frontal area and chin disappeared. He does not remember the name of medication injected. 

The Board finds that the evidence establishes that the Veteran engaged in combat with the enemy in active service and he sustained injuries to his face due to a mortar explosion. Service records show receipt of the Purple Heart and Combat Infantryman's Badge in Korea. Thus, the Board finds that the provisions of 38 U.S.C.A. § 1154 (b) and 38 C.F.R. § 3.304 (d) are applicable. 

Also, as noted above, the evidence shows that complete copies of the Veteran's service treatment records have been destroyed and any additional efforts to obtain the records would be futile. Destruction of service treatment records does not create a heightened benefit of the doubt, but only a heightened duty on the part of VA to consider the applicability of the benefit of the doubt, to assist the claimant in developing the claim, and to explain its decision. Cromer v. Nicholson, 19 Vet App 215 (2005); Russo v. Brown, 9 Vet. App. 46, 51 (1996). The Board has applied the benefit of the doubt and has found that the Veteran sustained burn injuries to his face while in service based upon the Veteran's lay statements of that in-service event. A layperson is competent to testify regarding observable symptoms, such as presence of scars, because this requires only personal knowledge as it comes to her through his senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). The Board finds that the Veteran's lay statements are credible as the Veteran consistently reported that the burn injury to the upper lip and the lay statements are consistent with his circumstances of service. 

The Board finds that the evidence is in equipoise on the question of whether service connection for a scar of the upper lip is warranted. The Veteran provided competent and credible lay evidence that he sustained a burn to the face in active service. He has provided competent and credible lay evidence that he has had a scar on the upper lip since the injury in active service. 

The February 2012 VA examination report indicates that the Veteran had a scar on his face due to a burn. The burn scar on the upper lip was less than deep partial. The upper lip scar was 3 centimeters by .5 centimeters. The surface contour of the scar was elevated on palpation. 

There is competent and credible evidence that weighs against the claim for service connection for tinnitus. See the March 2014 VA scar examination report. Resolving reasonable doubt in the Veteran's favor, the Board finds that the criteria for service connection for a scar on the upper lip have been met. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. The claim of service connection for a scar on the upper lip is granted. 


ORDER

Entitlement to a compensable disability rating for bilateral hearing loss is denied.

Entitlement to service connection for scar to the upper lip is granted. 




REMAND

VA's duty to assist includes providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. 38 U.S.C.A. § 5103A (d) (West 2014).

Regarding the claim for service connection for a left shoulder and lumbar spine disabilities, the Board finds that a medical examination and opinion are necessary to determine whether the Veteran has a left shoulder disability and a lumbar spine disability that were incurred in or are related to active service. As discussed above, the Veteran engaged in combat with the enemy while serving in Korea. He reported that he sustained trauma to the shoulder in service. See the December 2012 statement. In a January 2013 notice of disagreement, the Veteran stated that he injured his back in active service when running with gear; he stated that he would fall with the gear on top of him. 

VA is obliged to provide an examination when the record contains competent evidence that the claimant has a current disability or signs and symptoms of a current disability, the record indicates that the disability or signs and symptoms of disability may be associated with active service; and the record does not contain sufficient information to make a decision on the claim. 38 U.S.C.A. § 5103A (d); McLendon v. Nicholson, 20 Vet. App. 79 (2006). The Veteran is competent to report observable symptoms and a continuity of symptomatology. Duenas v. Principi, 18 Vet. App. 512 (2004); Charles v. Principi, 16 Vet. App. 370 (2002). For these reasons, the Board finds that an examination is necessary to determine if the Veteran has a current left shoulder and/or lumbar spine disability that is related to active service.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900 (c). Expedited handling is requested.)

1. Schedule the Veteran for a VA examination to determine the nature and etiology of the current left shoulder disability to include degenerative joint disease and rotator cuff tear and the lumbar spine disability. 

For each diagnosis, the examiner is requested to render an opinion as to whether it is at least as likely as not (i.e., at least a 50-50 probability) that the current disability was incurred in or is related to injury or disease or other event in military service. 

Attention is also invited to the Veteran's lay statement that he had trauma to the left shoulder and injury to the low back in active service. 

The examiner should provide a complete rationale for each opinion rendered.

2. After completing all indicated development, readjudicate the claims remaining on appeal in light of all the evidence of record. If the benefit sought is not granted, the Veteran and his representative should be furnished a supplemental statement of the case, and be afforded a reasonable opportunity to respond before the record is returned to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




____________________________________________
Thomas H. O'Shay
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs